UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | : | Crim. No. 3:16CR00083(AWT) |
|---|---|---|
| v. | : | |
| BOBBY HEMINGWAY | : | May 19, 2017 |

## **RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

The Court has scheduled sentencing in this matter for May 24, 2017. The Government respectfully submits this sentencing memorandum in response to the defendant's sentencing memorandum dated May 15, 2017 (Doc. No. 89) and in aid of the sentencing hearing of the defendant, Bobby Hemingway ("HEMINGWAY" or the "defendant").

For the reasons stated herein, the Government submits that the court should properly calculate the appropriate sentencing guidelines to be that of a "career offender" pursuant to §4B1.1(a) and impose a guidelines sentence of imprisonment consistent with that calculation. The Government believes this to be the proper calculation based on the defendant's criminal record including his federal drug conviction and his state assault in the first degree conviction. *See* Exhibit A (certificate of conviction) and Exhibit B (transcript). But in addition to the "career offender" designation being the proper guidelines calculation, the sentence is also the appropriate sentence regardless of the guidelines calculation determined by the Court because of the defendants repeated criminal behavior, the defendant's criminal history including that he committed this offense while on federal supervised release and his offense conduct. This takes

1

into account the reasonable and foreseeable conduct, the factors outlined in § 3553(a), and the defendant's history and characteristics, including his substantial criminal history.

In whatever manner the court resolves the career offender designation/calculation, there is no changing the fact that the defendant is a career offender who has proven repeatedly his resistance to rehabilitation and deterrence. This case is not just about four undercover crack cocaine buys from HEMINGWAY. As, not even HEMINGWAY can claim the sales to the undercover are the only time he has sold drugs since his release. The defendant was also standing next to a backpack filled with marijuana and a loaded firearm. This was the very location he was routinely selling crack cocaine from to the CHS and the UC. A loaded firearm was found in arms reach of the defendant and that firearm had a mixture of DNA which was more than likely or "moderately strong support" the defendants. *See* Exhibit C (lab report). This case is not only about the offense conduct but also about HEMINGWAY's track record of criminality. The defendant has repeatedly violated state and federal law, refuses to take responsibility even when he has pled guilty and was still selling drugs while on federal supervised release for the same behavior he was previously convicted of federally and sentenced to 44 months plus supervised release, selling cocaine. Further, the defendant has a history of illegal firearm possession and his DNA was found on a firearm that was on the shelf next to him.

## I. BACKGROUND

### A. Procedural Background

On or about May 3, 2016, a federal grand jury sitting in Hartford returned a five-count indictment against the defendant. Specifically, the Indictment charged four counts of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), possession with intent to distribute and distribution of a controlled substance and 18 U.S.C. §§ 922(g)(1) and 924(a)(2), felon in possession of a firearm.

On or about January 23, 2017, the defendant pled guilty before the Honorable Alvin E. Thompson to count one on the indictment. The defendant pled guilty to Count One of the Indictment, to wit, possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). The defendant's guilty plea was entered in accordance with a plea agreement with the Government. In that agreement, the parties agree on the criminal history level of V and for acceptance of responsibility under U.S.S.G. § 3E1.1. And, acknowledge that the defendant may be a career offender and reserve our rights to argue for and against the defendant's designation as a career offender.

The Government contends that the defendant should be considered/designated a career offender and respectfully disagrees with probations calculation of the guidelines in the Presentence Report ("PSR"). And, as is acknowledged in the plea agreement, "The parties agree that the defendant may qualify as a career offender based on his prior federal conviction for possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and his prior state conviction for first degree assault, in violation of Conn. Gen. Stat. § 53a-59(a)(5)."

The defendant's calculation as a career offender under the Guidelines is a 32 under U.S.S.G. § 4B1.1(b)(3) (maximum sentence is 20 years or more, but less than 25 years), and his Criminal History Category would be calculated as a VI, increasing the guideline incarceration range, after a reduction for acceptance of responsibility, to 151-188 months. Both parties reserved their respective rights to argue for and against the defendant's designation as a career offender. Attached as exhibit A and B are the Assault in the First Degree Conviction Certificate of Conviction and transcript from the Assault plea. This appears from the defense memorandum to be the issue that needs to be resolved by the court.

Regardless of the Guidelines range ultimately determined by the Court, the Government and the defendant both reserved their rights to seek an upward or downward departure or a non-Guidelines sentence, and both sides reserved their rights to object to a departure or a non-Guidelines sentence.

The PSR in this case calculated the offense level as a 23 (26 prior to acceptance of responsibility) based on the defendant's criminal history and the agreed to firearm enhancement. However, it does not take into account his prior federal conviction for possession with intent to distribute and his prior Connecticut state Assault in the First Degree conviction. According to §4B1.1(a) the defendant's prior convictions make him eligible for designation as a career offender because he has two prior felony convictions of either a crime of violence or a controlled substance offense. This makes him a category VI and offense level 32. The defense contends that the defendant's prior assault in the first degree conviction does not count because the defendant took an Alford plea. The fact that the guilty plea was an Alford plea is immaterial. The defendant stands convicted for Assault in the first degree and a federal controlled substance offense. The Connecticut conviction for assault in the first degree, in violation of Connecticut General Statute §53a-599a) (5) counts categorically as a crime of violence under the force clause and the enumerated offenses clause of Section 4B1.2.

In the defendant's Memorandum in aid of sentencing the defendant argues that the PSR calculation of 23 is appropriate, however, argues that the cocaine base should be treated like powder cocaine and thus receive a lower guidelines sentence. Further, the defendant argues that the defendant deserves a departure for health reasons based on the fact that he has rheumatoid arthritis. Additionally, the defendant despite agreeing to an enhancement for the firearm, takes a position contradictory to the enhancement and denies responsibility for the firearm that was next

to the defendant on the shelf and had his mixture of DNA on it. And, finally the defendant argues that his criminal history category calculation overstates his criminal history category when in fact it understates it and ignores the defendant's proper designation as a career offender. The legal arguments and requests for leniency are unpersuasive.

## II. FACTS AND CIRCUMSTANCES OF DEFENDANT'S CONDUCT

The PSR accurately sets forth a brief recitation of the facts and circumstances regarding the defendant's offense conduct with regard to the defendant's sale of cocaine base and possession of a firearm which form the basis for the charges in the indictment.

Since approximately June of 2015, the Hartford FBI Task Force has been investigating multiple individuals involved in the distribution of crack cocaine in the North End neighborhood of Hartford. As part of the investigation, they utilized an undercover officer ("UC") and a confidential human source ("CHS") to conduct controlled purchases of crack cocaine from one or more targets of the investigation.

In February of 2016, the task force received information from a confidential human source (herein "CHS") about the drug trafficking of BOBBY HEMINGWAY in the area of Enfield Street and Westland Street in the North End of Hartford. Based upon information provided by the CHS, to include the telephone number utilized by BOBBY HEMINGWAY, a controlled narcotics purchase was set with HEMINGWAY through an Undercover (UC), a sworn member of the Hartford, Connecticut Police Department.

Four controlled purchases were done from HEMINGWAY who was on federal supervised release. One (1) controlled buy of "crack" cocaine was done by a Confidential Human Source and three (3) Controlled buys of "crack" cocaine were done by UC. The

controlled purchases occurred as detailed in the PSR at paragraphs 9 - 17 on February 24, 2016, March 7, 2016, March 18, 2016, and April 7, 2016.

An Arrest Warrant and Complaint Report for HEMINGWAY and a Search Warrant for 233 Westland Street was issued by Magistrate Judge Richardson on April 21, 2016. Prior to execution, a buy was set up via cell phone text/conversation by the UC. During execution of the search warrant, the FBI Task Force recovered a .22 caliber High Standard Supermatic Citation handgun Serial # 2354726. The weapon was found in the basement within arm's reach of HEMINGWAY. The firearm was found loaded with one in the chamber and one in the magazine. The firearm, although made in CT, does have a federal nexus because it was sold and purchased in Florida. Hemingway is a convicted felon. A bag of marijuana weighing approximately 26 grams was recovered in a backpack located on the floor near where HEMINGWAY was standing and not far from the firearm.

Additionally, DNA was recovered from the firearm and HEMINGWAY was confirmed as a potential contributor as outlined in the DNA lab which the Government filed in response to the defense objections to the PSR and have attached as Exhibit C. The State of Connecticut Laboratory confirmed the drugs and weight of the cocaine base.

The defendant has at least five prior felony convictions. As indicated in the indictment the defendant, BOBBY HEMINGWAY, has been convicted (1) possession with intent to distribute cocaine base, in violation of Title 21, United States Code, Sections 841(a)(a) and (b)(1)(C), on November 23, 2009; (2) assault in the first degree, in violation of Connecticut General Statute Section 53a-59(a)(5), on January 20, 2010; 3) criminal possession of a firearm, in violation of Connecticut General Statute Section 53a-217c, on April 13, 2004; 4) possession of narcotics, in violation of Connecticut General Statute Section 21a-279(a), on October 20, 2008; and 5) larceny

in the second degree, in violation of Connecticut General Statute Section 53a-123, on October 20, 1998. The state certificate of conviction and transcript for the defendant's Assault in the first degree conviction are attached as Exhibit A and Exhibit B.

## III. LEGAL STANDARD

Although the Sentencing Guidelines are no longer mandatory, the Guidelines must be considered by the Court along with the other factors listed in 18 U.S.C. § 3553(a). *United States v. Booker*, 543 U.S. 220, 260-61 (2005); *United States v. Crosby*, 397 F.3d 103, 110 (2d Cir. 2005); *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007) ("district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process"); *see also Gall v. United States*, 552 U.S. at 46 ("though the Guidelines are advisory rather than mandatory, they are, as we pointed out in *Rita*, the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions") (footnote omitted); *see* 18 U.S.C. § 3553(a)(4) (Court shall consider the sentence applicable under the Guidelines).

A sentencing court must fashion a sentence that is both procedurally and substantively reasonable by properly calculating the base offense level under the United States Sentencing Guidelines and adequately explaining its reasoning for handing down a particular sentence. *Gall v. United States*, 128 S. Ct. 586, 594 (2007) ("It is also clear that a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications."). Where, as here, a defendant objects to a portion of the PSR, the court may hold an evidentiary hearing to rule on the dispute in order to ascertain the appropriate base offense level and fashion a procedurally reasonable sentence. Fed. Crim. R. Proc. 32(i)(3)(B). At such a hearing, the sentencing court may factor in any information that sheds light on the

defendant's history, background, behavior or characteristics. *Williams v. New York*, 337 U.S. 241, 249-50 (1949).

A sentencing judge is required to: "(1) calculate [] the relevant Guidelines range, including any applicable departure under the Guidelines system; (2) consider [] the Guidelines range, along with the other § 3553(a) factors; and (3) impose [] a reasonable sentence." See *United States v. Fernandez*, 443 F.3d 19, 26 (2d Cir. 2006); *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005). In turn, 18 U.S.C. § 3553(a) provides that "[t]he court, in determining the particular sentence to be imposed, shall consider:"

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [in the Sentencing Guidelines];

(5) any pertinent policy statement [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Second Circuit reviews a sentence for reasonableness, *see Rita v. United States*, 127 S. Ct. 2456, 2459 (2007), under a "deferential abuse-of-discretion standard," *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). As the Second Circuit recently explained:

> Our review has two components: procedural review and substantive review. [Cavera, 550 F.3d at 189.] We "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence--including an explanation for any deviation from the Guidelines range." Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007). Once we have determined that the sentence is procedurally sound, we then review the substantive reasonableness of the sentence, reversing only when the trial court's sentence "cannot be located within the range of permissible decisions." Cavera, 550 F.3d at 189 (internal quotation marks omitted).

*United States v. Dorvee*, 616 F.3d 174, 179 (2d Cir. 2010) (internal quotation marks and citations omitted).

## IV. **GUIDELINE CALCULATION**

The parties in the plea agreement stipulated to at least 28 grams but not more than 112 grams of cocaine as the relevant and readily foreseeable quantity of crack cocaine. Additionally, the parties agreed to a 2 level enhancement because the defendant possessed a dangerous weapon, U.S.S.G. § 2D1.1(b)(1). The agreement acknowledged that the defendant may qualify as a Career Offender under U.S.S.G. § 4B1.1, and that, if he so qualified, the applicable guideline range would be 151 to 188 months' imprisonment. The defendant reserved his right to challenge the Career Offender designation and to seek a variance or non-guideline sentence.

The defendant is a Career Offender. The government respectfully disagrees with the PSR and the argument that because the state assault in the first degree conviction was an Alford plea it does not count as a conviction for purposes of the career offender designation in the guidelines.

9

If the defendant has two or more qualifying convictions of either a "crime of violence" or "controlled substance offense," as those terms are defined in U.S.S.G. § 4B1.2, the base offense level is 32, as the offense of conviction carries a maximum term of imprisonment of 20 years. See U.S.S.G. § 4B1.1(b)(3). In its plea agreement, the government agreed to recommend a three level reduction for the defendant's acceptance of responsibility. However, based on the defendant's sentencing memorandum at the top of page 6 it is unclear if the defendant has taken responsibility pursuant to the plea agreement and the government may be seeking clarification on the record at the sentence. If the government agrees to acceptance of responsibility, the defendant qualifies as Criminal History Category VI under § 4B1.1(b) and a total offense level of 29 with a criminal history VI recommends a sentencing range of 151 to 188 months of imprisonment.

## V.   CAREER OFFENDER UNDER THE SENTENCING GUIDELINES

Section 4B1.1 of the United States Sentencing Guidelines provides that an offender is a "career offender" if the defendant was 18 years old at the time the offense was committed; the offense of conviction was either a "crime of violence" or "controlled substance offense;" and the offender had two or more prior felony convictions of either a "crime of violence" or "controlled substance offense."   A "Controlled Substance Offense" is defined as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b) (November 1, 2015). A "crime of violence offense" is defined as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that has an element the use, attempted use, or threatened use of physical force against the person of another, or is murder, voluntary manslaughter, a forcible sex offense, robbery, arson, extortion, or the use or

unlawful possession of firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S. C. § 841(c).

The defendant has the following qualifying convictions which qualify as a "controlled substance offense" and a "crime of violence offense."

1. Assault in the First Degree (aiding and abetting), in violation of Conn. Gen. Stat. § 53a—59(a)(5), on January 20, 2010; and

2. Possession with Intent to Distribute Cocaine Base in excess of five grams, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B), on November 23, 2009.

The defendant does not dispute that his 2009 conviction in United States District Court qualifies as a controlled substance offense. The defendant does, however, challenge the qualification of the Assault in the First degree because it was an Alford plea.

## VI. DISCUSSION

The Government respectfully submits that the Court should designate the defendant a career offender and impose a prison sentence within that guidelines range as the appropriate sentence for this defendant. This takes into account the reasonable and foreseeable conduct, the factors outlined in § 3553(a), and the defendant's history and characteristics, including his substantial criminal history. The Government submits this is the appropriate sentence regardless of how you calculate the Sentencing Guidelines or determine the definition of crime of violence or controlled substance offense.

However, the government maintains that the defendant's prior convictions do meet the definition of crime of violence and a controlled substance offense under the law in relation to calculating the Guidelines pursuant to §4B1.1(a) and (b) and 2K2.1(a)(2).

The defendant argues that one of the offenses, the crime of violence offense - the Assault in the first degree conviction, should not count for Career Offender designation because he took

the plea as an Alford plea. Additionally, the defendant claims in his memorandum in aid of sentencing that he was actually innocent when he took the Alford plea. These arguments are of no moment. As the defendant stands before you he stands convicted of a federal possession with intent to distribute which the defense concedes counts as a controlled substance offense and an Assault in the First Degree conviction. The Connecticut conviction for assault in the first degree, in violation of Connecticut General Statute §53a-59(a) (5) counts categorically as a crime of violence under the force clause and the enumerated offenses clause of Section 4B1.2.

The Sentencing Guidelines specifically enumerate as "crimes of violence" an aggravated assault which is what Assault in the First Degree section 5 comports with. Additionally, in the comments it states that crime of violence and controlled substance offense include the offenses of aiding and abetting, conspiring, and attempting to commit such offense.

Connecticut General Statutes § 53a-59(a)(5) defines Assault in the first degree as follows: "a) A person is guilty of assault in the first degree when: (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm."

Thus, Assault in the First Degree with a firearm is an enumerated offense in the current 2016 Guidelines and the Assault in the First Degree based on the charging document, Exhibit A, and the Transcript of the Plea, Exhibit B, meet the qualifications for a crime of violence under the Guidelines.

Additionally, as outlined in the PSR at paragraphs 34 through 42, the defendant has a total of 9 convictions, five of which are felonies. These convictions are for multiple Larcenies, illegal possession of a firearm, multiple Failures to Appear, Assault in the First Degree, and possession and sale of controlled substances. HEMINGWAY currently stands before you having committed

this offense while on supervised release for a federal felony for distribution of cocaine base. It is obvious from the sales to the CHS and UC in this matter that he never ended his criminal behavior.

## VII. IMPOSITION OF A REASONABLE SENTENCE UNDER 18 U.S.C. § 3553(a)

### A. Legal Standard

Under 18 U.S.C. § 3553(a), the sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The statute then provides:

> The court, in determining the particular sentence to be imposed, shall consider–
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>     (B) to afford adequate deterrence to criminal conduct;
>
>     (C) to protect the public from further crimes of the defendant; and
>
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established [in the Sentencing Guidelines];
>
> (5) any pertinent policy statement [issued by the Sentencing Commission];
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

B. Sentencing Factors in 18 U.S.C. § 3553(a)(2)

   1. *Seriousness of the Offense, Respect for the Law, and Providing Just Punishment.*

HEMINGWAY has accumulated an impressive criminal resume dating back to the age of sixteen (16). He now stands before the Court ready to be sentenced for his sixth felony conviction and tenth conviction. HEMINGWAY's adult life reflects a pattern of dangerous criminal activity. This pattern includes not only a lifestyle of selling drugs, but an attitude of defiance to the criminal justice system. One that has escalated as he has gotten older. The defendant has received the benefit of a substantially reduced sentences. Instead of seizing an opportunity to change his behavior, he continues to sell drugs. HEMINGWAY currently stands before you having committed this offense while on supervised release for a federal felony for distribution of cocaine base. It is obvious from the sales to the CHS and UC in this matter that he never ended his criminal behavior. And, likely picked up where he left off after his federal incarceration.

The history and characteristics of this defendant in contrast to the defendant's claim that now after all this time I want to turn my life around do not comport with what we already know about the defendant's past and continued criminal activity.

   2. *Adequate Deterrence*

As already repeated herein, the defendant has a serious and lengthy criminal history. HEMINGWAY has been undeterred in his pursuit of criminal activity and a lengthy prison is necessary if there is any hope in deterring him from future criminal activity.

   3. *Protection of the Public from the Defendant*

Protection of the public from further crimes of the defendant is an important factor in this case. The defendant, as stated above, has demonstrated an unwillingness and inability to refrain

from criminal activity. His criminal conduct has involved drugs, firearms, larceny and assault in which someone was shot, and violation of supervised release. No previous punishment or program provided by the judicial system has had *any* impact on curbing his behavior. His continued criminal conduct demonstrates a genuine need to protect the community. At some point, it becomes about the community as a whole and not what the defendant perceives he needs.

    4.    *Educational and Vocational Training, and Medical Care and Treatment*

The defendant reports history of drug use and abuse. The defendant has a sporadic work history. The defendant does not appear to have any vocational skills, and it's not apparent if he participated in any vocational programs while incarcerated. Unfortunately, there is little indication from the defendant's work and employment history, or his family history and characteristics, which would support him being a productive and law abiding member of society. The defendant points to his music career, public access television program or SWAG TV, and his work with the youth and charitable organizations in and around Hartford. As I reviewed the information in the defense Memorandum, Internet searches of SWAG TV and the information in the PSR, the one thing that stands out in my mind is what a wonderful way to corrupt the youth and sell drugs. The PSR indicates this is a double life and it is being promoted that way in the defense memorandum but it's also a way to meet clients to sell drugs. Despite the defendant's argument in his memorandum in aid of sentencing that he wants to turn over a new leaf and turn from a life of crime, this defendant's history and conduct in this case contradict this contention at every turn.

## VIII. **RESPONSE TO DEFENSE REQUEST FOR DEPARTURES**

The defense raised in its memorandum several grounds for a downward departure. The government opposes those grounds as outlined above and believes no departure is warranted. Additionally, the defense outlines in documentation via exhibits and its memorandum of law that the defendant should receive a variance for his health issue, rheumatoid arthritis. This does not constitute an "extraordinary physical impairment" and thus does not warrant departure from the sentencing guidelines. The Bureau of Prison's medical resources would be able to provide appropriate care. In fact, the defendant has done a 44-month sentence with the Bureau of Prisons and likely received care while incarcerated.

According to § 5H1.4 and the rule in this circuit "section 5H1.4 of the sentencing guidelines restricts departures based on physical condition to defendants with an 'extraordinary physical impairment,' such as those which render a defendant 'seriously infirm.'" *United States* v. *Altman*, 48 F.3d 96, 104(2d cir. 1995); *United States* v. *Yeazid Farraj*, 210 F. Supp. 2d 399 (SDNY 2002). While it appears HEMINGWAY will need monitoring and require vigilance it does not render the defendant infirm within the meaning of the sentencing guidelines. Accordingly, a downward departure is not warranted or appropriate in this case.

As indicated throughout this motion, a downward departure because the criminal history score overstates Hemingway's criminal history is also not appropriate. The defendant is a career offender and should be treated as such.

Additionally, this specific case warrants imposition of the proper drug calculation and imposition of the guidelines range as set forth for the "crack" cocaine or cocaine base not for powder cocaine. The defendant's criminal history, violation while on supervised release and all the other § 3553 factors warrant it.

## IX. **SUMMARY AND CONCLUSION**

In consideration of all the sentencing factors, the government submits that a lengthy sentence of imprisonment is not only reasonable and appropriate, but minimally necessary to achieve the purposes of sentencing under 18 U.S.C. § 3553(a).

The appropriate and reasonable sentence, in the government's view, must, however, exceed the previous sentences imposed. Accordingly, in consideration of the defendant's offense conduct, the importance of deterring him from future criminal conduct and the need to protect the community, the government recommends a sentence within the career offender designation. A sentence of this duration is longer than his previous sentences such that it reflects the seriousness of chronic drug dealing in our communities, promotes respect for the law particularly when the defendant repeatedly violates it, provides for specific deterrence and the protection of the community by removing the defendant from society for a substantial period of time.

Respectfully submitted,

DEIRDRE M. DALY
UNITED STATES ATTORNEY


*/s/ Patricia Stolfi Collins*

PATRICIA STOLFI COLLINS
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. CT phv08052
157 Church Street, Floor 25
New Haven, Connecticut 06510
(203) 821-3700
Patricia.stolfi.collins@usdoj.gov

CERTIFICATE OF SERVICE

       This is to certify that on May 19, 2017, a copy of the foregoing Sentencing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

       */s/ Patricia Stolfi Collins*
       PATRICIA STOLFI COLLINS
       ASSISTANT UNITED STATES ATTORNEY
       Federal Bar No. CT phv08052
       157 Church Street, Floor 25
       New Haven, Connecticut 06510
       (203) 821-3700
       Patricia.stolfi.collins@usdoj.gov